UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

PENGUIN GROUP (USA) INC.,                                 :

                 Plaintiff,                           :        **No. 09cv528 (GEL) (DF)**

     -against-                                              :        **ECF CASE**

AMERICAN BUDDHA,                                          :

               Defendant.                          :

------------------------------------------------------------------------- x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**


Richard Dannay (rxd@cll.com)
Thomas Kjellberg (txk@cll.com)
COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, NY  10036
Phone: 212-790-9200
Fax: 212-575-0671
Attorneys for Plaintiff

# TABLE OF CONTENTS

INTRODUCTORY STATEMENT ........................................................................ 1

BACKGROUND ................................................................................................ 2

ARGUMENT .................................................................................................... 6

I.   THE REQUIREMENTS OF CPLR § 302(A)(3)(II) ARE MET HERE ................................ 6

    A.   American Buddha Committed Tortious Acts Without the State, Giving Rise to the
Cause of Action Set Forth in the Complaint .................................................... 7

    B.   American Buddha's Tortious Acts Caused Injury to Penguin and its Intellectual
Property in New York ................................................................................ 7

    C.   American Buddha Should Reasonably Have Expected its Acts to Have Consequences in
New York ............................................................................................... 9

    D.   American Buddha Has Derived Substantial Revenue From Interstate or International
Commerce .............................................................................................. 10

II.   THE COURT'S EXERCISE OF JURISDICTION UNDER CPLR § 302(A)(3)(II) WILL
NOT VIOLATE AMERICAN BUDDHA'S DUE PROCESS RIGHTS ............................. 15

    A.   Minimum Contacts ................................................................................... 15

    B.   Reasonableness ....................................................................................... 18

CONCLUSION ................................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Auto Specialties Mfg. Co.*, 45 A.D.2d 331, 357 N.Y.S.2d 547 (3d Dep't 1974)................................................................................................................ 9

*Allen v. Canadian General Electric Co.*, 65 A.D.2d 39, 410 N.Y.S.2d 707 (3d Dep't 1978) ........................................................................................................ 10

*Alpha Int'l, Inc. v. T-Reproductions, Inc.*, 2003 U.S. Dist. LEXIS 11224 (S.D.N.Y. July 1, 2003)............................................................................. 15

*American Network v. Access Am./Connect Atlanta*, 975 F. Supp. 494 (S.D.N.Y. 1997)........................................................................................................... 9, 10

*Armco Inc. v. North Atl. Ins. Co.*, 68 F. Supp. 2d 330 (S.D.N.Y. 1999) ........................................ 6

*Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987) ............................................ 18

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990) ..................................................................................... 6

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120 (2d Cir. 2002)............................................................................................................... 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).............................................................. 15

*Calder v. Jones*, 465 U.S. 783 (1984)........................................................................................ 18

*Capitol Records v. VideoEgg*, 2009 U.S. Dist. LEXIS 19557 (S.D.N.Y. Mar. 9, 2009)................................................................................................................ 20, 21

*Chunky Corp. v. Blumenthal Brothers Chocolate Co.*, 299 F. Supp. 110 (S.D.N.Y. 1969)................................................................................................................ 10

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000)..................... 8, 9, 15, 17

*Cutco Indus., Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) ...................................................... 6

*Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*, 2005 U.S. Dist. LEXIS 2143 (S.D.N.Y. Feb. 14, 2005) ........................................................................... 8

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008)......................................................................................................... 10, 14, 21

*Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 425 N.Y.S.2d 783 (1980) ............................................................................................................. 9

*Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co.*, 2009 U.S. Dist. LEXIS 13369 (E.D.N.Y. Feb. 17, 2009)................................................................... 8

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985) ............................ 18

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000) ................... 16

*In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003)................................ 6

ii

*Ingraham v. Carroll*, 90 N.Y.2d 592, 665 N.Y.S.2d 10 (1997) ................................................. 10

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)........................................................ 15

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999) .................................................. 9, 20

*LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 713 N.Y.S.2d 304 (N.Y. 2000) ................... 7, 10

*M. Shanken Comm'ns. Inc. v. Cigar 500.com*, 2008 U.S. Dist. LEXIS 51997
        (S.D.N.Y. July 7, 2008) ................................................................................................ 20

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981) ........................................... 6

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 115 F.
        Supp. 2d 367 (S.D.N.Y. 2000) ...................................................................................... 8

*McGraw-Hill Cos. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252 (S.D.N.Y.
        2005).......................................................................................................................... 8, 9

*Mega Tech Int'l Corp. v. Al-Saghyir Establishment*, 1999 U.S. Dist. LEXIS 6381
        (S.D.N.Y. May 3, 1999) ................................................................................................ 20

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996)................. 15, 19

*Mfg. Tech., Inc. v. Kroger Co.*, 2006 U.S. Dist. LEXIS 90393 (S.D.N.Y. 2006).................... 8, 14

*Milliken v. Meyer*, 311 U.S. 457 (1940 ................................................................................. 18

*Obabueki v. Int'l Bus. Machines Corp.*, 2001 WL 921172 (S.D.N.Y. Aug. 14,
        2001)........................................................................................................................... 15

*PDK Labs v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997)........................................................ 6

*Prentice v. Demag Material Handling, Ltd.*, 80 A.D.2d 741, 437 N.Y.S.2d 173
        (4th Dep't 1981) ........................................................................................................... 14

*Ronar, Inc. v. Wallace*, 649 F. Supp. 310 (S.D.N.Y. 1986) ................................................. 10

*Savage Universal Corp. v. Grazier Constr.*, 2004 U.S. Dist. LEXIS 16088
        (S.D.N.Y. Aug. 13, 2004) ...................................................................................... passim

*Starmedia Network, Inc. v. Star Media, Inc.*, 2001 U.S. Dist. LEXIS 4870
        (S.D.N.Y. Apr. 23, 2001) ...................................................................... 9, 16, 17, 19

*Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 413 N.Y.S.2d 127 (1978) ....................................... 7, 10

*Thomas Publ'g Co. v. Indus. Quick Search, Inc.*, 237 F. Supp. 2d 489 (S.D.N.Y.
        2002)............................................................................................................................ 9

*Vecchio v. S & T Manufacturing Co.*, 601 F. Supp. 55 (E.D.N.Y. 1984)................................... 10

**Statutes**

17 U.S.C. § 512(g)(1) ....................................................................................................... 4

17 U.S.C. § 512(g)(3) ....................................................................................................... 2

CPLR § 302(a)(3)(ii)....................................................................................................... 7, 14

iii

**Legislative History**

S. Rep. No. 105-190.................................................................................................................... 3

Twelfth Ann. Report of N.Y. Judicial Conference (1967) ........................................................... 9

**Rules**

Federal Rule of Civil Procedure 4(k)(1)(A).................................................................................. 6

22159/031/1096375.1

Plaintiff Penguin Group (USA) Inc. ("Penguin") submits this memorandum of law in opposition to the motion filed by defendant American Buddha seeking an order pursuant to Fed. R. Civ. P. 12(b)(2) dismissing the action for lack of personal jurisdiction.  For the reasons set forth below, American Buddha's motion should be denied.

## INTRODUCTORY STATEMENT

This is an action by Penguin, whose principal office is located in New York City, for copyright infringement arising out of defendant American Buddha's posting online of <u>complete</u> digital copies of literary works in which Penguin owns exclusive reproduction and distribution rights.  The Penguin works, and numerous others, are reproduced, displayed, and made available to the general public in unprotected form in a purported "online library," referred to variously as the "Ralph Nader Online Library" and the "American Buddha Online Library," accessible from websites located at www.naderlibrary.com and www.american-buddha.com.   In addition to the unlawful reproduction and display of Penguin's copyrighted literary works, American Buddha's websites encourage and facilitate the downloading of unauthorized copies by the general public. American Buddha, which professes to "educate[] members as to the meaning of lawful fair use of copyrighted materials," informs website visitors such conduct is lawful "under a system of voluntary, free online lending, under the fair use exclusion from copyright liability accorded to libraries and archives pursuant to 17 U.S.C. Section 108."  *See* Exhibit 1.[1]

There can be no dispute as to Penguin's *prima facie* case of copyright infringement. Complaint ¶¶ 7-32.  The only question for the Court will be the purely legal one of American Buddha's purported defenses under, *inter alia*, the fair use privilege of Section 107 of the

---

[1] Exhibit citations reference exhibits to the Declaration of Thomas Kjellberg submitted herewith.

Copyright Act, and the "library privilege" of Section 108—which has never applied and does not apply to "virtual libraries," and would not excuse American Buddha's activities if it did.

## BACKGROUND

American Buddha quite literally invited this lawsuit.  In December 2008 and January 2009 Penguin learned that complete copies of the texts of several literary works in which Penguin owns exclusive publishing rights were posted in unprotected digital format on American Buddha's Naderlibrary.com website.  Penguin's counsel wrote to Charles Carreon, Esq. (hot-linked on the Naderlibrary.com site as "Legal Representation for American Buddha") requesting that the text of the first of the works Penguin discovered, *The Golden Ass* by Apuleius (translation by E. J. Kenney) be removed from the site.  *See* December 18, 2008 letter of Richard Dannay to Charles Carreon, Exhibit 2.  Following an exchange of ordinary mail, Exhibit 3, and email, Exhibit 4, Mr. Carreon "invite[d]" Penguin "to serve a DMCA notice on American Buddha's designated agent for service of DMCA notices," to which "American Buddha will respond with a prompt takedown."  December 23, 2008 letter of Charles Carreon to Richard Dannay, Exhibit 5.

Penguin served the invited Notice of Claimed Infringement, Exhibit 6, on American Buddha's designee, in response to which the unauthorized copy was removed temporarily from the Naderlibrary.com website.  Several days later, however, Mr. Carreon, "acting as the attorney for American Buddha," submitted to its own webmaster a "counter notification" pursuant to 17 U.S.C. § 512(g)(3), stating in part that American Buddha

> has a good faith belief that the material was removed due mistaken misapplication [sic] of the applicable law of copyright, including without limitation:  Penguin Books' refusal to accord the American Buddha Online Library the exemption from liability granted by 17 U.S.C. § 108 and the First Amendment, notwithstanding the subscriber's compliance with 37

2

C.F.R. 201.14; the Constitutional right of fair use under 17 U.S.C. § 107; the first-sale doctrine; and, because of mistakes of fact.

January 13, 2009 letter of Charles Carreon to Jacob Hammond, Exhibit 7.

American Buddha's purported defenses under 17 U.S.C. §§ 108 and 107 are devoid of merit. American Buddha was apprised prior to this litigation that its claim that an online digital "library" is entitled to the Section 108 "exemption" is frivolous. As the Senate Report accompanying the DMCA states:

> [T]he Committee wants to make clear that, just as when section 108 of the Copyright Act was first enacted, the term "libraries" and "archives" as used and described in this provision still refer to such institutions only in the conventional sense of entities that are established as, and conduct their operations through, physical premises in which collections of information may be used by researchers and other members of the public. Although online interactive digital networks have since given birth to online digital "libraries" and "archives" that exist only in the virtual (rather than physical) sense on websites, bulletin boards and homepages across the Internet, it is not the Committee's intent that section 108 as revised apply to such collections of information. The ease with which such sites are established online literally allows anyone to create his or her own digital "library" or "archives." The extension of the application of section 108 to all such sites would be tantamount to creating an exception to the exclusive rights of copyright holders that would permit any person who has an online website, bulletin board or a homepage to freely reproduce and distribute copyrighted works. Such an exemption would swallow the general rule and severely impair the copyright owners' right and ability to commercially exploit their copyrighted works. Consequently, the Committee intends that references to "the premises of the library or archives" in amended sections 108(b)(2) and (c)(2) mean only physical premises.

S. Rep. No. 105-190, at 62; *see* Exhibits 2, 4. Nor has the fair use defense under Section 107 of the Copyright Act ever applied to the reproduction and distribution of complete copies of literary works with no fair use purpose or justification.

The counter-notice Mr. Carreon submitted triggered an obligation by the service provider, in order to remain exempt from liability for removing the material, to "replace the

3

removed material and cease[] disabling access to it not less than 10, nor more than 14, business days following receipt of the counter notice."  17 U.S.C. § 512(g)(1).  The service provider, however, may refrain from replacing the material, and remain exempt from liability, if its designated agent receives notice within the 10-to14-business day period that the person who submitted the original notice—i.e., Penguin—"has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network."  17 U.S.C. § 512(g)(1)-(2).

By submitting the counter-notice, American Buddha in effect compelled Penguin to file this lawsuit, in order to prevent the infringing material from being restored to the American Buddha sites.  American Buddha re-posted the material nonetheless.[2]

While the American-buddha.com website states that "American Buddha educates members as to the meaning of lawful fair use of copyrighted materials, and imposes contractual and technical limitations on access to the archive," *see* Exhibit 1, no such limitations are in effect.  The Penguin works at issue are available to all for viewing and downloading without <u>any</u> restriction, contractual or technological. *See* Kjellberg Decl. ¶ 8.  American Buddha informs users that its activities, and users' downloads, are "consistent with copyright law[.]  Quite simply, when you visit NaderLibrary.com you are visiting a library, and the same rules apply." *See* Exhibit 8.

---

[2] American Buddha purports to be both "service provider" <u>and</u> "subscriber" under the statute.  Accordingly, its invocation of the statutory safe harbor under 17 U.S.C. § 512(c)-(g), which exempts service providers from liability to copyright owners for infringing matter placed on a website at the direction of a user (and liability to users for the improper removal of material), was a charade.  American Buddha's invocation of the notification-counternotification process under 17 U.S.C. § 512(c) had no discernible purpose, except to "invite" Penguin to sue.

4

On the self-described "Charles Carreon website" Badcrazy.com, Web users are solicited to "join ABOL" with the claim, "Everybody talks about free online content, but only ABOL, the American Buddha Online Library, has found the right way to deliver it—the old fashioned way—through a library format." *See* Exhibit 9.

Charles Carreon is not merely American Buddha's "legal representative." He is, according to the certificate of incorporation, one of American Buddha's incorporators (along with Tara Lyn Carreon and Ana Belinda Carreon), and its contact person. *See* Exhibit 10. Mr. Carreon's law practice, Online Media Law, PLLC, is listed on the Oregon Secretary of State website as the "assumed business name" of Online Media Law, LLC. Both Online Media Law, LLC and Online Media Law, PLLC have the same principal place of business—2165 S. Avenida Planeta, Tucson, Arizona—the same principal place of business listed for American Buddha. And Online Media Law, LLC and American Buddha list the same registered agent for service— Ana Carreon, one of the incorporators of American Buddha. *See id.*

Moreover, the publicly available WHOIS information for the American-buddha.com, Naderlibrary.com, Charlescarreon.com and Badcrazy.com websites, as well as the website Sixthorder.com, shows the Registrant for all five sites to be

> Online Media Law, PLLC
> 2165 S. Avenida Planeta
> Tucson, Arizona 85710
>  United States

The Administrative Contact, as well as the Technical Contact, for all five sites is:

> Carreon, Charles  chas@charlescarreon.com
> Online Media Law, PLLC
> 2165 S. Avenida Planeta
> Tucson, Arizona 85710
> United States

*See* Exhibit 11.

**ARGUMENT**

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden to establish the court's jurisdiction. *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003). However, where, as here, no discovery has been conducted on the issue of personal jurisdiction, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists, based on the pleadings and affidavits and supporting materials. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). On a motion to dismiss for lack of personal jurisdiction, all "pleadings and affidavits must be construed in the light most favorable to the plaintiffs, and all doubts resolved in plaintiffs' favor." *Armco Inc. v. North Atl. Ins. Co.*, 68 F. Supp. 2d 330, 335 (S.D.N.Y. 1999); *Cutco Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986).

Federal Rule of Civil Procedure 4(k)(1)(A) provides that service of a summons is effective to establish jurisdiction over the person of a defendant if that defendant "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Thus, "[i]n a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules." *PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).

Penguin is able to establish a *prima facie* case of personal jurisdiction over American Buddha.

## I.   THE REQUIREMENTS OF CPLR § 302(A)(3)(II) ARE MET HERE

The New York long-arm statute confers jurisdiction over a defendant where the cause of action arises out of a tort committed outside of New York, but the tort causes harm within New

York.  In order to establish jurisdiction under CPLR § 302(a)(3)(ii), the plaintiff must show that (1) the defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; and (5) the defendant derives substantial revenue from interstate or international commerce.  *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304 (N.Y. 2000).

Here all of the elements of a *prima facie* case of personal jurisdiction over American Buddha under CPLR § 302(a)(3)(ii) are present.

### A.     American Buddha Committed Tortious Acts Without the State, Giving Rise to the Cause of Action Set Forth in the Complaint

To satisfy the first and second elements, the plaintiff "need not actually prove that defendant committed a tort but rather need only state a colorable cause of action."  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 125 (2d Cir. 2002).  The complaint alleges that American Buddha has committed and continues to commit multiple acts of copyright infringement.  Complaint ¶¶ 1-32.  In fact, American Buddha's assertion, in response to the takedown notice it "invited" Penguin to serve on it, of <u>defenses</u> to infringement, based on Sections 107 (fair use) and 108 ("library privilege") of the Copyright Act, effectively concedes that the acts complained of make out a *prima facie* case of copyright infringement.

### B.     American Buddha's Tortious Acts Caused Injury to Penguin and its Intellectual Property in New York

It is axiomatic that American Buddha's copyright infringement has injured Penguin in New York.  *See Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 204, 413 N.Y.S.2d 127 (1978) (under CPLR § 302(a)(3)(ii), a New York-based intellectual property owner is injured in New York by defendant's out-of-state acts of unfair competition and misappropriation of trade secrets);

7

*McGraw-Hill Cos. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) ("the torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held, in this case New York."); *Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*, 2005 U.S. Dist. LEXIS 2143 (S.D.N.Y. Feb. 14, 2005) (copyright case) ("because the plaintiffs (and their intellectual property) are based in New York, the injury is felt within the state no matter where the infringement takes place"); *Mfg. Tech., Inc. v. Kroger Co.*, 2006 U.S. Dist. LEXIS 90393 (S.D.N.Y. 2006) ("because plaintiff (and its intellectual property) is based in New York, the injury from the alleged trade secret theft is felt within New York State no matter where the theft took place.").

In *Savage Universal Corp. v. Grazier Constr.*, 2004 U.S. Dist. LEXIS 16088 (S.D.N.Y. Aug. 13, 2004) (Lynch, J.), this Court similarly found that

> [t]he infringing use of [plaintiff]'s trademarks and trade name to "cybersquat" and otherwise direct [plaintiff]'s legitimate commercial traffic to websites operated by [defendant] qualifies as a "tortious act" without the state, which has caused harm within the state. … [Plaintiff] has presented sufficient allegations that the alleged infringement caused injury within New York, as the "first effects" of trademark infringement or dilution are typically felt where the trademark owner resides and conducts business, and can include injury in the form of damage to goodwill, lost sales, or lost customers.

*Id*. at *30 (citing *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 568 (S.D.N.Y. 2000)).

It is thus well-established that for the purpose of Section 302(a)(3), when an intellectual property owner "resides and conducts business in New York … New York [is] the place of the economic injury." *Fifth Ave. of Long Island Realty Assocs. v. Caruso Mgmt. Co.*, 2009 U.S. Dist. LEXIS 13369, *5-6 (E.D.N.Y. Feb. 17, 2009). In sum, "Plaintiff is based in and therefore felt any injury in New York." *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 115 F. Supp. 2d 367, 373 (S.D.N.Y. 2000).

8

### C.   American Buddha Should Reasonably Have Expected its Acts to Have Consequences in New York

When American Buddha placed Penguin's books on its websites, for download in unprotected digital format, American Buddha knew or should have known that Penguin is located in New York. *Starmedia Network, Inc. v. Star Media, Inc.*, 2001 U.S. Dist. LEXIS 4870 (S.D.N.Y. Apr. 23, 2001) ("defendant knew of plaintiff's domain name before it registered [infringing name] as its domain name.  Therefore, the defendant knew or should have known of plaintiff's place of business, and should have anticipated being haled into New York's courts to answer for the harm to a New York plaintiff.").

"The test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (quoting *Allen v. Auto Specialties Mfg. Co.*, 45 A.D.2d 331, 357 N.Y.S.2d 547, 550 (3d Dep't 1974)).  The "foreseeability" requirement "'relates to forum consequences generally and not to the specific event which produced injury within the state.'" *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 n.4, 425 N.Y.S.2d 783, 787 n.4 (1980) (quoting Twelfth Ann. Report of N.Y. Judicial Conference 344 (1967)); *American Network v. Access Am./Connect Atlanta*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997).

Courts in this District have repeatedly held that harm within New York was reasonably foreseeable by an out-of-state infringer of a New York entity's intellectual property rights. *Ingenium*, 375 F. Supp. 2d at 256 ("It is reasonably foreseeable that the provision of materials that infringe the copyrights and trademarks of a New York company will have consequences in New York.") (citing *Citigroup*, 97 F. Supp. 2d at 568); *Thomas Publ'g Co. v. Indus. Quick Search, Inc.*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002) ("it is reasonable for IQS to expect that

9

if it infringed on Thomas's publications, there would be consequences in New York" within the meaning of the long-arm statute); *Sybron Corp.*, 46 N.Y.2d at 206, 413 N.Y.S.2d at 132 (harm within New York from out-of-state of trade secret misappropriation and unfair competition was foreseeable); *American Network*, 975 F. Supp. at 498 ("It was reasonably foreseeable to defendant that publishing its home page on its Web site, with the offending mark, would have New York consequences.").

### D. American Buddha Has Derived Substantial Revenue From Interstate or International Commerce

New York courts have looked to both the absolute amount and percentage of a defendant's interstate income in determining whether that income is "substantial." *See Vecchio v. S & T Manufacturing Co.*, 601 F. Supp. 55, 57 (E.D.N.Y. 1984); *Allen v. Canadian General Electric Co.*, 65 A.D.2d 39, 410 N.Y.S.2d 707, 708-09 (3d Dep't 1978). Neither test is binding, however, and "each case must be decided on its own facts." *Chunky Corp. v. Blumenthal Brothers Chocolate Co.*, 299 F. Supp. 110, 115 (S.D.N.Y. 1969). However, "[i]rrespective of the approach chosen, the main concern is the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008); *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 318 (S.D.N.Y. 1986).

The substantial-revenue element "requires no direct contact with New York State." *Ingraham v. Carroll*, 90 N.Y.2d 592, 598, 665 N.Y.S.2d 10 (1997) (citation omitted). Instead, it is intended to avoid the exercise of personal jurisdiction over non-domiciliaries whose activities are of a "local character." *LaMarca*, 95 N.Y.2d at 215.

It is clear that American Buddha's activities are not merely "local in character." Quite the contrary—the American-buddha.com site characterizes itself as "the American Buddha

Online Library, the world's best media website."  The Naderlibrary.com site distinguishes the worldwide "Online Library Access for All" via the web, the activity at the root of this action, from such apparently "local" activities as "Tucson Area Library Access for Members"—i.e., "regularly-scheduled events at the Nader Library facility in Southeast Tucson, Arizona."  Exhibit 8.  Thus, "[a]lthough [defendant] claims that his businesses are purely local …, even a cursory review of his business websites indicates otherwise."  *Savage Universal Corp.*, 2004 U.S. Dist. LEXIS 16088, *31.

Another "Charles Carreon website," Sixthorder.com, *see* Exhibit 11, displays what purports to be a "PLEADING INDEX (PDF)" for "AMERICAN BUDDHA VS. THE CITY OF ASHLAND AND THE WASHINGTON POST COMPANY," in which numerous documents and emails generated by or addressed to American Buddha's counsel are available.  The "index," accessible at http://www.sixthorder.com/ambuvs.city.toc.htm, includes many documents pertaining to what Mr. Carreon characterizes as "a serious legal dispute that has arisen between my client and Google Inc."  In the first of these, an April 13, 2007 letter to Kent Walker, Esq., General Counsel of Google Inc., Mr. Carreon complains that American-buddha.com "has been purged from the Google index of websites, and thus Google results never display direct links to the Library Site."  *See* Exhibit 12.  Mr. Carreon reveals that American Buddha's "membership" and its activities, as well as its ambitions, go well beyond the "simple, passive website" it claims to be for purposes of the present motion:

> American Buddha has operated the American Buddha Online Library on the Internet at www.american-buddha.com, since year 2000 ("the Library Site").  During the last six years, the Library Site has built up a membership of over 50,000 users, and its pages have steadily climbed in "Page Rank" under the Google PR system, until with respect to many search categories, the Library Site would appear on the first page of search results for searches involving major topics of political, artistic, philosophical, and cinematic importance.

11

*Id.*

      Mr. Carreon's complaint, on American Buddha's behalf, is that the removal of American-buddha.com from the Google index is "interfering both with the access of its 50,000-plus members, and with the Library Site's ability to reach new members."  This lowered visibility is a matter of critical importance to American Buddha:  "This letter is sent with the greatest urgency, as the damages being suffered by the Library Site and American Buddha are severe and continuing."  *Id.*  American Buddha's urgent concern with 50,000-plus members' (and "prospective members'") continued access to its site, and with "reach[ing] new members," via the most-used search engine on the Web, and its claim to suffer "severe damages" when its visibility on the World Wide Web is lowered, are hardly consistent with a "purely local" operation.

      American Buddha's commercial publishing activities are likewise the opposite of purely local.  American Buddha is the publisher (and its principals the authors) of at least nine literary works sold in Kindle e-book format on Amazon.com:  *What Is Buddhism?* (American Buddha Philosophy), by Charles Carreon and Tara Carreon; *Born In Tibet, Again: The Exile of the 12th Trungpa Tulku* (American Buddha Biographies) by Charles Carreon; *The Revolution Will Not Be Capitalized: Che Guevara* by Charles Carreon; *A Legend In His Own Mind -- Michael Ruppert Soldiers On* (American Buddha Biographies) by Charles Carreon; *Jack Abramoff's House of Cards* (American Buddha Biographies) by Charles Carreon; *No Good Deed Will Go Unpunished – The Mike Bianca Story* (American Buddha Biographies) by Charles Carreon; *Lucretius, Sage of The First Millennium* (American Buddha Biographies) by Charles Carreon; and *The Terrorist Who Loved Me – The Betrayal of Pete Seda* (American Buddha Biographies) by Charles Carreon.  *See* Exhibits 13-20.

12

The American Buddha publications sold nationally and internationally on Amazon.com have generated substantial revenue; several have an "Amazon.com Sales Rank" within, or near, the top quarter in sales among the approximately quarter-million literary works in Kindle format sold on Amazon.com.[3]  *See id.*

In addition, the Naderlibrary.com site, via links titled "The Sex Dot Com Chronicles" and "Charles' Primer of Online Media Law," redirects users to a site called Sex.comchronicles.com —on which a "Buy From Amazon.com" link appears.  Clicking the "Buy From Amazon.com" link leads directly to an inner page on the Amazon.com site, where Charles Carreon's book *The Sex.Com Chronicles: A White-Hat Lawyer's Journey to the Dark Side of the Internet*, priced at $18.99, may be purchased, and may be "Add[ed] to Shopping Cart" with a single click.[4]  *See* Exhibit 21.

Tellingly, neither American Buddha's own works nor Mr. Carreon's *Sex.Com* book are available for free download on the Naderlibrary.com or American-Buddha.com sites, as are the works of Penguin and others.  Rather than give its own works away, American Buddha redirects users to Amazon.com, where they can purchase copies of Mr. Carreon's and American Buddha's works at retail.[5]

---

[3] Amazon.com, Inc., headquartered in Seattle, is the largest online retailer in the U.S., with North American fulfillment centers located in Arizona, Delaware, Indiana, Kansas, Kentucky, Nevada, New Hampshire, Pennsylvania, Texas, and Ontario, and sales to every state—the opposite of a "purely local" operation.

[4] Similar links, to Sex.comchronicles.com and ultimately to the same Amazon.com "checkout" page, appear on the Badcrazy.com and Charlescarreon.com websites. *See* Exhibits 22, 23.

[5] The Naderlibrary.com site also contains a link ("Legal Representation for American Buddha provided by Online Media Law, PLLC") redirecting users to Charlescarreon.com, devoted to the law practice of American Buddha's general counsel and officer, which also shares

*(footnote continued on following page)*

13

Thus, a cursory review of the Naderlibrary.com and American-Buddha.com websites (as well as Amazon.com, Sixthorder.com and perhaps Charlescarreon.com) reveals business activities on American Buddha's part that are far beyond merely "local in character," and that American Buddha derives substantial revenue from interstate and international commerce.

In any case, "dismissal for lack of personal jurisdiction is inappropriate under 302(a)(3)(ii) even where there is no proof that a defendant derives substantial revenue from interstate or international commerce, where that knowledge is peculiarly under the control of [the defendant], and may come to light in the course of [s]ubsequent discovery." *Energy Brands*, 571 F. Supp. 2d at 468 (alterations in original) (quoting *Kroger Co.,* 2006 U.S. Dist. LEXIS 90393 at *10); *see Prentice v. Demag Material Handling, Ltd.*, 80 A.D.2d 741, 742, 437 N.Y.S.2d 173 (4th Dep't 1981) (denial of motion to dismiss was proper where defendant "is in sole possession of information that may refute the allegation that it engages in substantial international trade").

\*\*\*

Penguin has established all of the elements of a *prima facie* case of personal jurisdiction under CPLR § 302(a)(3)(ii).  This Court may properly exercise jurisdiction over American Buddha pursuant to the New York long-arm statute.

---

its physical address in Tucson with American Buddha.  There Mr. Carreon solicits clients who have not Arizona but "California or Federal law issue(s)."  Potential clients are advised, "I always require payment of a retainer in an appropriate amount before I take on a client, and don't take cases on contingency, or for startup equity.  I will always send you a written agreement for signature, and representation begins when I have the signed agreement in hand and payment in my account."  Visa and Mastercard logos on the Charlescarreon.com home page indicate that payment may be made by credit card.  *See* Exhibit 23.

14

II.     **THE COURT'S EXERCISE OF JURISDICTION UNDER CPLR § 302(A)(3)(II) WILL NOT VIOLATE AMERICAN BUDDHA'S DUE PROCESS RIGHTS**

Jurisdiction over American Buddha also comports with the constitutional requirement of due process.  The due process test for personal jurisdiction has two parts:  the "minimum contacts" inquiry and the "reasonableness" inquiry.  *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

A.      **Minimum Contacts**

The minimum contacts requirement is met "if the defendant has 'purposefully directed' his activities at the residents of the forum"; i.e, there has been "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  The Court should consider the relationship among the defendant, the forum, and the litigation.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984).

Courts in this circuit have held that purposeful activity without the state that would result in minimum contacts with the state "may also include the operation of an Internet website."  *Obabueki v. Int'l Bus. Machines Corp.*, 2001 WL 921172, at *2-3 (S.D.N.Y. Aug. 14, 2001).  "The courts have identified a spectrum of cases involving a defendant's use of the internet."  *Citigroup*, 97 F. Supp. 2d at 565.  "At one end are cases where the defendant makes information available on what is essentially a 'passive' web site. … At the other end of the spectrum are cases in which the defendant clearly does business over the internet."  *Id.*  "Occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction."  *Id.*; *see Alpha Int'l, Inc. v. T-Reproductions, Inc.*, 2003 U.S. Dist. LEXIS 11224 (S.D.N.Y. July 1, 2003) ("Websites that

permit information exchange between the defendant and viewers are deemed 'interactive,' and generally support a finding of personal  jurisdiction over the defendant.").

"Generally, an interactive website supports a finding of personal jurisdiction over the defendant."  *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000).  "When considering the middle category, that is, sites which are interactive but are not used to conduct business, courts look to the level of interactivity and commercial nature of the exchange of information that occurs on the Website to determine whether jurisdiction should be exercised."  *Starmedia Network, Inc.*, 2001 U.S. Dist. LEXIS 4870, *10 (internal quotation marks omitted).

The Naderlibrary.com and American-Buddha.com websites do much more than passively post information.  American Buddha directs users to copy and to "download" copyright-protected books in their entirety, and promotes that copying and downloading by misrepresenting that the user and the site are engaged in lawful activity under the federal Copyright Act.  *See* Exhibit 1.

The American-Buddha.com site actively solicits users to "join up" by undertaking a three-step "membership process" requiring the submission of personal identifying information and execution of a click-wrap agreement, *see* Exhibit 1, in exchange for which the user is purportedly granted "access to the content that originally brought you here, and the rest of the ABOL archives"—including the Penguin works at issue—and other benefits (e.g., "ABOL opens its doors to members on movie nights at the Nader Library, 2165 S. Avenida Planeta, Tucson, Arizona.").  Exhibit 24.

16

It is clear from the click-wrap agreement, which by its terms requires users to agree not to "attempt to download more than one media file at a time," Exhibit 1,[6] that actively "mak[ing] available … artistic and literary works," Exhibit 25, for allegedly lawful free downloading by the general public, and not passively providing information, is the function of the "American Buddha Online Library" sites.  *See Citigroup*, 97 F. Supp. 2d at 565 ("the defendant clearly does business over the internet … where it knowingly and repeatedly transmits computer files to customers in other states.").

In *Starmedia Network, Inc.*, 2001 U.S. Dist. LEXIS 4870, the court found that plaintiff had shown *prima facie* evidence of "minimum contacts" with New York for purposes of specific jurisdiction under the Due Process Clause where

> the defendant knew of plaintiff's domain name before it registered [an infringing name] as its domain name.  Therefore, the defendant knew or should have known of plaintiff's place of business, and should have anticipated being haled into New York's courts to answer for the harm to a New York plaintiff caused by using a similar mark.  Coupled with this fact is the defendant's substantial income from interstate commerce and commercial use of the website to support its sales, including potentially to New York customers.

2001 U.S. Dist. LEXIS 4870, *12.  The same elements are met here.  To the extent that American Buddha gives away copies of Penguin's works, rather than sell them in traditional "transactions," it does not diminish the commerciality of American Buddha's use of those works to attract traffic to its websites and to its own works, which it does not give away but sells on

---

[6] When the provision is read in context, it is clear that American Buddha's concern is to avoid the excessive demand on its bandwidth that multiple simultaneous downloads of the copyrighted works of others would impose.

Amazon.com.[7]  *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985) ("The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.").  And it does nothing to reduce the damage done to copyright owners, who if anything are harmed more by unauthorized copies given away for free than copies sold.

      **B.**    **Reasonableness**

The reasonableness requirement is met if the assertion of personal jurisdiction over the defendant comports with "traditional notions of fair play and substantial justice" under the circumstances of the particular case.  *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Courts take into account five factors in the reasonableness inquiry:  (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.  *See Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113-14 (1987).

---

[7] American Buddha promotes *What Is Buddhism?* (American Buddha Philosophy), by Charles Carreon and Tara Carreon, which it sells on Amazon.com, by displaying it adjacent to one of the Penguin books American Buddha gives away, *Oil!* by Upton Sinclair.  And American Buddha does not reproduce just any image of the Sinclair book; it uses the front cover image of the current Penguin paperback edition, with its reference to the Oscar-winning film *There Will Be Blood*, based on the novel, and photo image of the Oscar-winning Daniel Day-Lewis in the starring role.  *See* Exhibit 24.

First, American Buddha has presented no evidence, and has not asserted, that defending against this litigation in New York would impose a burden so unreasonable that it would amount to a violation of its constitutional rights.  There is no suggestion that "this general burden presents any particular hardship to it."  *Starmedia Network, Inc.*, 2001 U.S. Dist. LEXIS 4870, *13.  American Buddha is represented by its own general counsel (and officer of the corporation), also its administrative and technical contact for its websites, who practices under the trade name Online Media Law, PLLC, as well as by a law firm in New York.  Under those circumstances it is unlikely, "in this modern age and for a litigant with obvious familiarity with internet communication, [that] litigation in New York would present so great an inconvenience as to constitute a deprivation of due process."  *Savage Universal Corp.*, 2004 U.S. Dist. LEXIS 16088, *35; *see Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996) ("the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.").[8]

Second, "New York has a legitimate interest in insuring that corporations with substantial business operations in the state are given legal protection and in remedying tortious activities that occur within the state."  *Mega Tech Int'l Corp. v. Al-Saghyir Establishment*, 1999 U.S. Dist.

---

[8] The terms of American Buddha's click-wrap agreement suggest that the media law- and e-commerce-savvy American Buddha does not view litigation in another state to be particularly burdensome, for itself or for anyone else.  The clickwrap agreement requires American Buddha Online Library "joiners" to "consent to the jurisdiction of the U.S. District Court for the District of Oregon for the resolution of any disputes concerning my use of the creative work," Exhibit 1—notwithstanding that American Buddha's principal place of business, and its purported "physical library," are located in Tucson, Arizona.  American Buddha thus anticipates and even requires that prospective disputes over the copyrighted works that it unlawfully reproduces, displays, and allows and encourages users to download be adjudicated in a federal district court 1,000 miles from its own "local" district—and potentially thousands of miles from the "joiner's" home district.

LEXIS 6381, *18-19 (S.D.N.Y. May 3, 1999).  In particular, because so many publishers and

other intellectual property holders such as Penguin are located here, "New York has a substantial

interest in protecting the intellectual property rights of copyright and trademark holders."  *M.*

*Shanken Comm'ns. Inc. v. Cigar 500.com*, 2008 U.S. Dist. LEXIS 51997 (S.D.N.Y. July 7,

2008); *see Capitol Records v. VideoEgg*, 2009 U.S. Dist. LEXIS 19557 (S.D.N.Y. Mar. 9, 2009)

("this forum is home to numerous record companies forced to seek court intervention to deter

online copyright infringement and thus has an interest in the adjudication of the issues raised by

Plaintiffs' complaint.").

Third, Penguin's interest in obtaining convenient and effective relief is clearly served by

litigating in New York.  *See VideoEgg*, 2009 U.S. Dist. LEXIS 19557, *33 ("the Plaintiffs'

interest in convenient relief is served by litigating in this forum because many of them have New

York as their principal place of business.").

Fourth, the interstate judicial system's interest in efficient resolution of this dispute

would be served by adjudication in New York.  Witnesses and evidence are at least as likely to

be located in New York as anywhere else, a primary consideration under the fourth factor.

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 245 (2d Cir. 1999).  From the nature of the case it

appears that, "[f]rom a judicial efficiency perspective, New York is as efficient as [any state] as a

forum to resolve the controversy, because the bulk of the evidence concerns internet website

printouts and federal court or agency records, which are accessible anywhere to parties with

internet access (a group to which [defendant] plainly belongs)."  *Savage Universal*, 2004 U.S.

Dist. LEXIS 16088, *36.

Fifth, there is no substantive social policy that would be undermined by this Court's

exercise of personal jurisdiction over American Buddha.  Indeed, this Court's resolution of the

instant dispute *could* not "conflict with the fundamental substantive social policies" of another State or of the United States, "because Plaintiffs allege violations of federal copyright law." *VideoEgg*, 2009 U.S. Dist. LEXIS 19557, *33 (internal quotation marks omitted); *Savage Universal*, 2004 U.S. Dist. LEXIS 16088, *36 ("litigating this case in New York presents no conflict with the sovereignty of Oregon, because it primarily concerns the Lanham Act, a federal statute.").

\* \* \*

Finally, "as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances [than does] N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands*, 571 F. Supp. at 469.

Accordingly, the United States Constitution's due process requirements for asserting personal jurisdiction over American Buddha are satisfied.

## CONCLUSION

For the reasons set forth above, Penguin respectfully requests that this Court deny American Buddha's motion to dismiss the complaint.

Dated: New York, N.Y.
      March 20, 2009

                            Respectfully submitted,

                               s/Richard Dannay
                              Richard Dannay (rxd@cll.com)
                              Thomas Kjellberg (txk@cll.com)
                              COWAN, LIEBOWITZ & LATMAN, P.C.
                              1133 Avenue of the Americas
                              New York, New York 10036-6799
                              (212) 790-9200
                              Attorneys for Plaintiff
                              Penguin Group (USA) Inc.

22159/031/1096375.1