Charles Carreon (Cal. Bar # 127139)
ONLINE MEDIA LAW, PLLC
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel: 520-841-0835
Fax: 503-296-5317
Email: chas@charlescarreon.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PENGUIN GROUP (USA) INC.,

    Plaintiff,

-against-                            Case No. 09 CIV 00528 GEL

AMERICAN BUDDHA,

    Defendant.

**DEFENDANT AMERICAN BUDDHA'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

1. **Penguin Has Failed To Address This Court's Holding In *Freeplay***

Penguin's opposition brief is most notable for its failure to respond to defendant's invocation of the holding in *Freeplay Music, Inc. v. Cox Radion, Inc., et al.,* 04 Civ. 5238 (GEL) (S.D.N.Y. 6/22/2005), in which this Court dismissed a copyright lawsuit against a non-resident defendant whose website streamed allegedly infringing soundtracks in New York. A search for *Freeplay*, *supra,* in the opposition brief's two-page table of authorities produces no result. Penguin has ignored Freeplay entirely, and thereby admitted that it cannot reconcile the facts of this case with its holding that a passive website with no transactional features evinces no intent on the part of defendant to purposefully avail itself of the New York forum, gives rise to no minimum contacts, and therefore does not subject the website proprietor to suit in this jurisdiction.

The jurisdictional cases cited by Penguin may be readily distinguished. *Sybron Corporation v. Alfred J. Wetzel,* 385 N.E. 2d 1055, 46 N.Y. 2d 197 (1978) bears no resemblance to this action, being an action by an employer to enjoin a former employee from divulging

manufacturing secrets.  *McGraw-Hill Cos. v. Ingenium Techs. Corp.,* 375 F. Supp. 2d 252 (S.D.N.Y. 2005) is also a far stretch from from the facts of this case, because defendant's representative met with plaintiff's employees "at McGraw-Hill's offices in New York several times each year [and there] were numerous other contacts with New York as well; for example, Ingenium each month e-mailed to a McGraw-Hill employee based in New York a revenue and expense report relating to their arrangements."  *Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.,* 2005 U.S. Dist. LEXIS 2143 (S.D.N.Y. Feb. 14, 2005) likewise bears no similarity to this case, involving as it does, the deliberate delivery by a Georgia company of infringing vinyl wall covering designs to a New York company in response to a specific request from within New York to send the designs to a private investigator within the forum state.  *Savage Universal Corp. v. Grazier Constr.,* 2004 U.S. Dist. LEXIS 16088 (S.D.N.Y. Aug. 13, 2004) (Lynch, J.) was a trademark and cybersquatting case involving a defendant who engaged in "the infringing use of [plaintiff's] trademarks and trade name to 'cybersquat' and otherwise direct [plaintiff's] legitimate commerical traffic to websites operated by [defendant, which] qualifies as a 'tortious act' without the state, which has caused harm within the state."  Instructively for this case, this Court observed in *Savage Universal, supra,* that "the mere operation of a website does not constitute a tort anywhere the website can be viewed..."  *Fifth Ave. of Long Island Realty Associates v. Caruson Mgmt.,* 2009 U.S.Dist. LEXIS 13369, *5-6 (E.D.N.Y. Feb. 17, 2009) is utterly inapposite.  *Fifth Ave.,* was a trademark dispute between a New York limited liability partnership and a California limited liability partnership over the trademark "Americana," in the market for leasing property management services in shopping centers, where enormous business interests were at issue, the defendant had an office in New York, the parties had a history of prior litigation, the ownership of Internet domain names were in dispute, and on a record of dueling affidavits, the court resolved the issue of whether personal jurisdiction existed, the dispositive fact being that defendant had announced to the New York real estate world that it had:
> "[O]pened an office in New York and professed to the business community that its New York office was 'a strategic expansion for the company,' stating that 'the opening of a New York office ... establishes a pivotal location for the company in the hub of the U.S. fashion industry,' allowing [defendant] to 'expand on [its] existing relationship with top industry innovators in fashion and retail,' have

>'closer contact with premier fashion houses as well as the latest retail pioneers' and 'explore real estate opportunities on the East Coast.'"

The facts of *Fifth Ave., supra,* are thus demonstrably as distant as Tucson, Arizona is from New York City.   Finally, the case of *Mario Valente Collezione v. Confezioni Semeraro,* 174 F.Supp. 2d 170 (S.D.N.Y. 12/06/2001) is utterly dissimilar from the case at bar.  To quote the opinion is to dispose of the argument:

> "[T]he tort claims arise out of defendants' contacts with New York because Kindler, as Semeraro/CSP's agent and at Semeraro's direction, committed the torts in New York. Kindler, on his own and through Sheer, contacted Bloomingdale's and Lord & Taylor in New York and told these two stores, which previously had purchased Mario Valente coats from the plaintiff, that the plaintiff either had gone out of business or had lost the Mario Valente label. These acts establish minimum contacts with New York, and they also satisfy the purposeful availment prong of the constitutional due process inquiry. By sending an agent to New York to perform these acts, Semeraro/CSP purposefully availed itself of the privilege of doing business in New York and reasonably could have foreseen that Semeraro/CSP could be made to answer for these tortious acts in front of a New York court."

In summary, *Freeplay, supra,* remains the most apposite, well-focused authority on the issue of passive websites, and its holding compels the granting of this motion.

### 2. Penguin Has Resorted to Fiction To Obscure the Relevant Facts

While the most obvious defect in Penguin's opposition is the omission of any discussion of *Freeplay*, its graver error is one of inclusion.  Apparently seeking to malign defense counsel, Penguin has adulterated the fact-finding process with statements that are patently false.  On page 17 of its brief, Penguin correctly describes defense counsel as a prolific author of political essays, then falsely states that his essays are not found in the free archives of defendant's online library websites, NaderLibrary.com and American-Buddha.com, but rather are exclusively offered for sale on the Amazon Kindle wireless platform.[1]  Penguin's assertion is pure fiction.  A brief search will show that all these essays are published on American-Buddha.com, on a webpage entitled "Charles Carreon, The Arizona Kid," and can there be read in their entirety at no charge. (Carreon Dec. ¶ 4; Exhibit 1.)  All but two of the essays are available at

---

[1] All revenues from the Kindle publications go to Online Media Law, PLLC, and although some of Mr. Carreon's Kindle publications are referred to as "American Buddha Biographies," that is because they were offered at American-Buddha.com for free before they were published on Kindle. (Carreon Dec. ¶ 5.)

NaderLibrary.com, and by using the "Nutch Search" engine on either website to search for "Charles Carreon" and any of the essay titles, the reader will be directed to their precise locations on both websites. (Carreon Dec. ¶ 4.) All of Mr. Carreon's works are available free online.[2]

The assertion that Mr. Carreon is an officer of American Buddha is another false statement, as may be seen from 7 of Exhibit 10 to the Kjellberg Declaration. (Carreon Dec. ¶ 12.) The sole officer of American Buddha is Tara Carreon, and Mr. Carreon, who took a role as incorporator simply to get the corporation started, has not been an officer of the company since on or about January 22, 2002. (Carreon Dec. ¶ 12; Exhibit 5.)

The facts relevant to this motion are the jurisdictional allegations of the complaint, found at paragraph 5. Penguin there merely alleged "upon information and belief, defendant American Buddha has engaged in infringing activities that injure plaintiff in this district, and is otherwise subject to personal jurisdiction...." Penguin made no specific allegations as to defendant's conduct outside the State, and cannot add to those allegations now by inveighing against the defendant's lawyer. Further, the complaint alleges that infringements are occurring on *NaderLibrary.com*, but in its opposition, Penguin brings in discussions about all kinds of other websites that fall outside the ambit of the pleadings. This effort to expand the scope of the action was not anticipated when the moving papers were filed, and while defendant's counsel has provided additional averments to dispel the resulting confusion, this should not be construed as opening the door to an expanded scope for the lawsuit. (Carreon Dec., *generally*.) The Kjellberg Declaration is simply a large red herring laid upon the Court's plate in an effort to forestall an unfavorable ruling, and should be disposed of in an appropriate manner.

3. **Penguin's Argument Has No Substance**

Purged of embellishment and evasion, nothing remains of Penguin's jurisdictional argument. To quote the author Gertrude Stein -- "There is no there there."

---

[2] Penguin makes much of defense counsel's authorship of *The Sex.Com Chronicles – A White-Hat Lawyer's Journey to the Dark Side of the Internet*. The book tells the story of the author's experiences as the successful trial lawyer in the case that gave rise to *Kremen v. Cohen,* 337 F.3d 1024 (2003), where in a case of first impression, the Ninth Circuit held Internet domains to be personal property in the State of California. (Carreon Dec. ¶ 9.)

**4. Conclusion**

Defendant American Buddha lacks minimum contacts with the forum. Accordingly, personal jurisdiction is lacking, and the Court is respectfully requested to dismiss the action on that ground.

Dated: March 27, 2009

Respectfully submitted:

s/Charles Carreon
Charles Carreon (Cal. Bar # 127139)
Online Media Law, PLLC
Admitted Pro Hac Vice