
Charles Carreon (Cal. Bar # 127139)
Admitted *Pro Hac Vice*
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel: 520-841-0835
Fax: 520-843-2083
Email: chas@charlescarreon.com
Attorney for Defendant American Buddha

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENGUIN GROUP (USA) INC.,

      Plaintiff,

  -against-

AMERICAN BUDDHA,

      Defendant.

Case No. 09 CIV 00528 JGK

## MEMORANDUM IN SUPPORT OF AMERICAN BUDDHA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**1. Introductory Statement**

    American Buddha previously prevailed on its first motion to dismiss for lack of personal jurisdiction, when this action was pending before the Hon. Gerard E. Lynch, who has since been elevated to the Second Circuit. On reassignment to the Hon. John G. Koeltl, pursuant to a remand from the Second Circuit Court of Appeals based upon a new interpretation of the N.Y. C.P.L.R. § 302(a)(2) making a narrow change to existing law regarding the "situs of injury" for a copyright infringement claim, American Buddha moves again for dismissal for lack of personal jurisdiction. The grounds for the motion are that plaintiff cannot carry its burden of establishing necessary jurisdictional facts under the "foreseeability" and "substantial revenue" prongs of Subsection (ii) of C.P.L.R. § 302(a)(2), and further, that the exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice required under the Fourteenth Amendment of the United States Constitution, as established in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

2. **Procedural History**

   a. **The District Court's Dismissal for Lack of Personal Jurisdiction**

   This action was filed on January 20, 2009 by Penguin Group (USA), Inc. ("Penguin") alleging one claim for copyright infringement against American Buddha (American Buddha), an Oregon nonprofit corporation with an office in Tucson, Arizona. Relying on established precedent, the Hon. Gerard Lynch dismissed the action for lack of personal jurisdiction on April 21, 2009, and the Clerk of Court entered Judgment for American Buddha the same day.

   b. **The Second Circuit's Certification of a Question to the NYCA**

Penguin appealed, and after oral argument, the Second Circuit certified the following question to the New York Court of Appeals for decision:

> "In copyright infringement cases, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?"

*Penguin Group (USA) Inc. v. American Buddha,* 609 F.3d 30, 42 (2nd Cir. 2010).

   c. **The NYCA's Answer to the Certified Question**

The New York Court of Appeals answered the certified question as follows:[1]

> "Because the Internet plays a significant role in this case, we narrow and reformulate the certified question to read:
>
>> 'In copyright infringement cases involving the uploading of a copyrighted printed literary work onto the Internet, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302 (a) (3) (ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?'
>
> "In answer to this reformulated question and under the circumstances of this case, we conclude it is the location of the copyright holder.
>
> * * *
>
> "CPLR 302 (a) (3) (ii) incorporates built-in safeguards against such exposure by requiring a plaintiff to show that the nondomiciliary both 'expects or should reasonably expect the act to have consequences in the state' and, importantly,

---

[1] American Buddha notes, without making extensive argument, that it opposed certification of any question to the NYCA from the outset, arguing in opposition that copyright preemption precluded allowing a state court to determine the issue of the situs of injury for copyright, and thereby preserved the right to further appeal the correctness of the answer to the certified question, should the occasion arise.

'derives substantial revenue from interstate or international commerce.' There must also be proof that the out-of-state defendant has the requisite "minimum contacts" with the forum state and that the prospect of defending a suit here comports with "traditional notions of fair play and substantial justice," as required by the Federal Due Process Clause (*International Shoe Co. v Washington,* 326 US 310, 316 [1945] [internal quotation marks and citation omitted]; *see also World-Wide Volkswagen Corp. v Woodson,* 444 US 286, 291-292 [1980])."

*Penguin Group (USA) Inc. v. American Buddha,* 16 N.Y.3d 295, 301-302, 307 (2011).

### d.  The Second Circuit's Directions On Remand

The Second Circuit remanded the case to this Court with the following directions:

"As we observed in American Buddha II, the district court's opinion and order dismissing Penguin's complaint addressed only the situs-of-injury issue. See id.; Am. Buddha I, 2009 WL 1069158, at *4, 2009 U.S. Dist. LEXIS 34032, at *13 ("As this issue is dispositive, it is not necessary to explore whether plaintiff has met its burden on the other elements necessary to establish jurisdiction under Rule 302(a)(3)(ii), or whether the exercise of jurisdiction would comport with due process."). We therefore vacate the judgment of the district court and remand this case to that court for its consideration in the first instance of whether Penguin has established the four remaining jurisdictional requisites, and the extent to which the assertion of personal jurisdiction over American Buddha would be consistent with the requirements of Due Process."

### 3.  Facts Supporting Plaintiff's Motion

American Buddha is an Oregon nonprofit corporation whose President and sole volunteer worker lives in Tucson, Arizona. (Carreon Dec. ¶¶ 1, 4, 5, and 7.) Penguin alleges copyright infringement based on content appearing on American Buddha's passive website, www.naderlibrary.com, that is not directed at or targeted to New York residents. (Complaint ¶ 9; Carreon Dec. ¶ 9.) In the course of argument and appeal, Penguin has expanded the scope of argument to include the activity of a second website operated by American Buddha, to wit, www.american-buddha.com. Accordingly, since the same analysis applies to the operation of both sites, the two websites are referred to jointly herein as the "AB Websites."

American Buddha is operated by one person, Tara Lyn Carreon, the President of the corporation, and the company has no agents acting on its behalf. (Carreon Dec. ¶¶ 1 and 4.) American Buddha has caused no effect in New York. (Carreon Dec. ¶ 14.) American Buddha neither expects nor should it reasonably expect its act to have consequences in New York.

(Carreon Dec. ¶¶ 14 - 21.) American Buddha has no real estate, personal property, or bank accounts anywhere in the United States or in any other nation. (Carreon Dec. ¶ 9.) American Buddha does not sell any product, nor does it sell advertising, anywhere in the world. (Carreon Dec. ¶ 9.) American Buddha derives no revenue whatsoever from interstate or international commerce. (Carreon Dec. ¶ 9.)

### 4. The Standard For The Motion

When a defendant moves to dismiss for lack of personal jurisdiction under F.R.Civ.P. 12(b)(2), plaintiff bears the burden of establishing grounds for jurisdiction. *In re Magnetic Audiotape Antitrust Litigation,* 334 F.3d 204, 206 (2nd Cir. 2003).

### 5. Analysis Under C.P.L.R. § 302(a)(3)(ii)

C.P.L.R. § 302(a)(3)(ii) (herein "Subsection (ii)") provides that "a court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent … expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Thus, Subsection (ii) has two analytical elements, requiring this Court *first* to determine whether American Buddha expected or reasonably should have expected the act to have consequences in New York, and *second* whether American Buddha derives substantial revenue from interstate or international commerce. Both prongs should be interpreted with attention to the New York Legislature's policy to avoid unfairness to nondomiciliaries: "The longarm statute's concern is that small, local companies who could not anticipate litigation in foreign forums not be exposed to suit in foreign forums." *Markham v. Gray,* 393 F.Supp. 163, 166 (W.D.N.Y.1975).

### a. American Buddha Performed No Act That A Reasonable Person Would Expect to Cause A Consequence With Jurisdictional Implications In New York

The New York Legislature limited the exercise of jurisdiction over a defendant who performs acts that it "expects or should reasonably expect … to have consequences in the state" in order "to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed

elsewhere…." *Hamilton v. Accu-Tek,* 32 F.Supp.2d 47, 56 (EDNY 1998), *quoting Ingraham v. Carroll,* 90 N.Y.2d 592, 598, 665 N.Y.S.2d 10, 12, 687 N.E.2d 1293 (1997).

The *Hamilton* opinion calls this first element of the Subsection (ii) the "foreseeability requirement," and observes that "New York cases addressing the foreseeability requirement after the Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) have looked to that case, often integrating the 'reasonable anticipation of suit' analysis of World-Wide Volkswagen with the foreseeability requirements of C.P.L.R. § 302." Thus, "After *Asahi,*[2] it is clear that ***foreseeability requires an affirmative or purposeful act invoking the benefits or protections of New York law,*** see *id.*, or, in other words, there must be evidence of '***a discernable effort to directly or indirectly serve the New York market.***'"[3] *Hamilton v. Accu-Tek,* 32 F.Supp.2d at 56, *quoting Schaadt v. T.W. Kutter, Inc.,* 169 A.D.2d 969, 970, 564 N.Y.S.2d 865, 866 (3d Dep't 1991).

Penguin's allegations regarding the effects of American Buddha's act of operating the AB Websites are limited to the conclusory allegation that "[u]pon information and belief, American Buddha has engaged in infringing activities that injure plaintiff in this district, and is otherwise subject to personal jurisdiction in this district." (Complaint ¶ 5.) It is, in fact, the law of the case that "Penguin does not specifically allege the loss of customers or other direct harm in New York…." *Penguin Group (USA) Inc. v. American Buddha,* 609 F.3d 30, 41 (2nd Cir. 2010). Because Penguin prevailed on appeal by contending that it lost no customers, and for that matter, changed the course of the law in the process of so contending, it is judicially estopped from arguing now that it has suffered loss of customers or other direct harm in New York. *Bates v. Long Island R.R., Co.,* 997 F.2d 1028, 1037-38 (2nd Cir. 1993); *accord, Simon v. Safelite Glass Corp.,* 128 F.3d 68, 71 (1997).

Further, the declaration of American Buddha's librarian makes it clear that American Buddha does not engage in commerce of any sort, and has never made a "discernable effort to

---

[2] *Asahi Metal Indus. v. Superior Ct. of Cal.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).
[3] Accordingly, American Buddha requests that, in analyzing this first prong under Subsection (ii), the Court also consider the arguments set forth in section 6 of this brief, *infra*.

directly or indirectly serve the New York market." (Carreon Dec. ¶ 9.) Accordingly, Penguin cannot carry its burden of showing that it meets the "foreseeability requirement" of Subsection (ii), and on that ground, the action should be dismissed.

### b. American Buddha Has No Revenue From Interstate or International Commerce

The New York Court of Appeals has referred to the revenue analysis of Subsection (ii) as the "***indispensable*** second prong of subdivision (a)(3)(ii)." *Ingraham v. Carroll,* 90 N.Y.2d 592, 598-599 (1997). Quoting from *Ingraham, supra,* a decision from the Western District explains the meaning of this indispensable second prong:

> "***Simply put, the second prong is a 'bigness requirement', the purpose of which is to ensure that the defendant is 'economically big enough to defend suit in New York.'***"
>
> *Roberts-Gordon, LLC v. Superior Radiant Products,* 85 F.Supp.2d 202, (WDNY 2000), *quoting Ingraham v. Carroll,* 90 N.Y.2d 592, 598-599 (1997) (emphasis added), *quoting* 12 *Ann. Report of N.Y.Jud.Conf.,* at 342-43).

American Buddha is definitely not economically big enough to defend suit in New York. (Carreon Dec. ¶ 22.) Further, applying the proper legal test to determine the issue makes it clear that, as a matter of law, ***American Buddha is financially nonexistent***.

*Ronar, Inc. v. Wallace,* 649 F.Supp. 310 (SDNY 1986), is an often-quoted case from this District that summarized case law on how to determine whether a foreign defendant has "substantial revenue" from interstate or international commerce under the second prong:

> "Whether revenue is 'substantial' under New York law is determined on both relative and absolute scales. New York courts have analyzed defendants' revenues from interstate or international commerce as percentages of their total revenues. More recent cases have turned to the amount of interstate or international revenues as an absolute number for a more appropriate measure. Neither approach is binding on the court, as 'each case must be decided on its own facts.' [Multiple citations omitted.]"
>
> *Ronar, Inc. supra,* 649 F.Supp. at 316-317.

Whether determined on a relative or absolute scale, the result is the same on the facts of the case before this Court. American Buddha has no revenue from any source. (Carreon Dec. ¶ 9.) American Buddha's revenues from interstate or international commerce total zero dollars ($0.00), and its total revenue is also zero dollars ($0.00). Thus, the percentage of total

revenue derived from interstate or international commerce is zero, which is the same number produced by analyzing its revenues as an "absolute number."  This is the very *non plus ultra* of "smallness" on the scale of economic "bigness," and accordingly American Buddha is clearly too small to be required to defend a lawsuit in New York.   Accordingly, Penguin cannot carry its burden of showing that American Buddha has substantial revenue from interstate or international commerce under the second prong of Subsection (ii), and the action must be dismissed.

**6. The Exercise of Jurisdiction Over American Buddha Would Violate the Fourteenth Amendment and Traditional Notions of Fair Play And Substantial Justice**

The due process clause of the Fourteenth Amendment provides:

> "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; ***nor shall any State deprive any person of life, liberty, or property, without due process of law***; nor deny to any person within its jurisdiction the equal protection of the laws."

Since the United States Supreme Court's decision in *International Shoe Co. v. Washington,* 326 U. S. 310 (1945), it has been hornbook law that the power of the courts to render valid judgments upon the residents of other states is limited by the due process clause of the Fourteenth Amendment.  *International Shoe* held that compliance with due process requires states to exercise jurisdiction only over defendants who "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

Minimum contacts analysis has evolved to "purposeful availments" analysis, as announced in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, (1980):

> "When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' [citation] it has clear notice that it is subject to suit there…. Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.  But there is no such or similar basis for Oklahoma jurisdiction over World-Wide or Seaway in this case. …. There is no evidence of record that any automobiles distributed by World-Wide are sold to retail customers outside this tristate area. It is foreseeable that the purchasers of automobiles sold by

> World-Wide and Seaway may take them to Oklahoma. But the mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'"
>
> *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297 – 298, *quoting Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

The Second Circuit explained the holding of *World-Wide Volkswagen* in *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236:

> "In *World-Wide Volkswagen,* the … **Supreme Court found jurisdiction improper because there was no evidence in the record that petitioners had attempted 'to serve, directly or indirectly, the market for its product' in the forum state.**"
>
> *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d at 243 (emphasis added).

Parsing a more recent Supreme Court decision, *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Second Circuit reiterated that "to satisfy the minimum contacts prong of the due process inquiry, ***a manufacturer must do more than merely place a product into the 'stream of commerce.'*** [Citation.] Instead, the plurality stated, a 'finding of ***minimum contacts must come about by an action of the defendant purposefully directed toward the forum State***.'" *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d at 243 (emphasis added), *quoting Asahi, supra* 480 U.S. at 112.

As noted under the argument regarding the "foreseeability prong" of Subsection (ii) at section 5.a, *supra*, Penguin has not alleged, and is judicially estopped from alleging, that American Buddha ever caused any effects in New York. This is totally consistent with the fact that American Buddha has not purposefully directed any of its activities, including the AB Websites, at the residents of New York, or in any way sought to avail itself of the privilege of doing business there. (Carreon Dec. ¶ 9.) American Buddha has simply placed a website in "cyberspace," from where it is, concededly, visible in New York, but that is not a jurisdictional contact within the meaning of the precedents.

To assert personal jurisdiction over American Buddha would cause great hardship, and would offend "traditional notions of fair play and substantial justice" by giving Penguin, a huge worldwide corporation with vast resources, the opportunity to pummel an adversary without any revenue, that provides a local library service in Tucson, Arizona, with punishing litigation costs despite the fact that it has not even alleged any perceptible harm to its interests.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### 7. Conclusion

The Court is respectfully requested to dismiss the action for lack of personal jurisdiction over American Buddha.

Dated: July 21, 2011
Respectfully submitted:


_____
Charles Carreon (California Bar # 127139)
Admitted *Pro Hac Vice*
Attorney for Defendant American Buddha