Charles Carreon (Cal. Bar # 127139)
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel: 520-841-0835
Fax: 520-843-2083
Email: chas@charlescarreon.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENGUIN GROUP (USA) INC.,

    Plaintiff,

-against-

AMERICAN BUDDHA,

    Defendant.

Case No. 09 CIV 00528 RA

# REPLY MEMORANDUM IN SUPPORT OF AMERICAN BUDDHA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**1. Penguin has Precisely Failed to Comply with the Requirements of the Revenue Portion of the Statutory Test.**

In order to justify carrying on with its meritless assertions of jurisdiction in the absence of the revenue that must be shown under C.P.L.R. § 302(a)(3)(ii), Penguin ignores the plain facts asserted at pages 9 and 10 of American Buddha's moving papers, establishing that there is no revenue from Amazon sales for Online Media Law, PLLC ("OML"):

> "In 2008, Amazon paid OML $38.74 for Kindle publication royalties on the Fifteen Titles. (Charles Carreon Dec. ¶ 6; Exhibit 3.) In 2009, Amazon paid OML $689.96 in royalties on all the Fifteen Titles, comprised of $219.99 for Kindle publications, and $470 for paperbacks published on demand by an Amazon subsidiary. (Charles Carreon Dec. ¶ 6; Exhibit 3.) In 2010, Amazon paid OML $681.04 in royalties on all the Fifteen Titles, $315.88 for Kindle, and $365.16 for paperbacks. (Charles Carreon Dec. ¶ 6; Exhibit 3.) These payments, totaling $1,409.74, and spread out over the intervening 36 months, amount to an average of $39.16 per month, or $1.30 per day. It is clear that even the

> gross royalty payments flowing from the Fifteen Titles do not amount to substantial revenue. Nor are these amounts substantial in a relative sense, as a proportion of OML's gross revenue. (Charles Carreon Dec. ¶ 6.) OML has netted no revenue, because it is not even in the black on the Fifteen Titles. The cost of publishing and promoting just one of them, *Trail of the Octopus*, exceeded the aggregate of all royalties paid on all Fifteen Titles in 2008 - 2010. (Charles Carreon Dec. ¶ 11; Exhibit 7.)"

There is no revenue from the sale of the Fifteen Titles on Amazon.com, much less any revenue to be imputed to American Buddha.

The court need not reach any of the further arguments, because none of them have any bearing upon the outcome of the motion. Nothing that Penguin can say will create what does not exist: substantial revenue for American Buddha.

2. **Rule 9 Pleading Requirements Would Render Any Attempt to Amend Futile**

   a. **New York Law Applies When "Alter Ego" Allegations Are Claimed to Establish Personal Jurisdiction**

The alter ego law of the forum state is applied to test alter ego allegations made to establish jurisdictional predicates. *Eg., Seiko Epson Corp. v. Print-Rite Holdings, Ltd.,* 2002 U.S. Dist. *LEXIS* 27427, 33-37 (Or. Apr. 30, 2002) [1], *citing Genetic Implant Sys., Inc. v. Core-Vent Corp.,* 123 F.3d 1455, 1459-60 (Fed. Cir. 1997) and *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.,* 757 F.2d 1256, 1264-65 (Fed. Cir. 1985).

/ / /

/ / /

---

[1] ***Seiko Epson* traces three trends in alter ego jurisdiction**: "[S]ome courts hold the corporate veil should be pierced and alter ego jurisdiction should be asserted over affiliated foreign corporations only if the plaintiff shows the defendant disregarded strict corporate formalities in such a manner and degree that the independence of the two companies, in fact, was breached. [Citation.] In addition, courts exercise their equitable powers to assert alter ego jurisdiction over foreign defendants that exert total control over the affairs and activities of the local defendant so that the two defendants are in reality a single entity. [Citation.] Finally, some courts have pierced the corporate veil and exercised personal jurisdiction over foreign companies because the local defendant was engaged in activities the foreign company would have been required to undertake itself if the local defendant did not exist." *Seiko Epson*, 2002 U.S. Dist. *LEXIS* 27427, 33-37. **None of these three fact scenarios are allegable on Penguin's facts.**

### b. New York Veil-Piercing Requires "Domination" of The Corporation And A Fraudulent or Wrongful Transaction That Injures The Plaintiff

> "Generally, courts will only pierce the corporate veil and hold two corporations to constitute a single legal unit, where one is so related to, or organized, or controlled by, the other as to be its instrumentality or alter ego."
>
> *@Wireless Enters. v. AI Consulting, LLC,* 2011 U.S. Dist. LEXIS 51973 (W.D.N.Y. May 13, 2011).
>
> "New York law requires the party seeking to pierce a corporate veil to make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."
> *American Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2nd Cir. 1997) (citations omitted).

This is a "conjunctive test … that require[s] a showing of both domination and fraud or wrong to justify the piercing of a corporate veil." *American Fuel, supra, at id.*

> "'New York courts apply a presumption of separateness to corporations and are hesitant to disregard the corporate form.'" *Prescient Acquisition Group, Inc. v. MJ Pub. Trust,* No. 05 Civ. 6298, 2006 U.S. Dist. LEXIS 52879, 2006 WL 2136293, at *4 (S.D.N.Y. July 31, 2006); *see also William Wrigley Jr. Co. v. Waters,* 890 F.2d 594, 600 (2d Cir. 1989) (noting that New York courts are reluctant to pierce the corporate veil). New York law allows the corporate veil to be pierced "where 1) 'the owner exercised complete domination over the corporation with respect to the transaction at issue,' and 2) 'such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC,* 268 F.3d 58, 63 (2d Cir. 2001) [**29]  (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir. 1997)); see also *Zinaman v. USTS N.Y., Inc.,* 798 F. Supp. 128, 132 (S.D.N.Y. 1992). "Veil-piercing is a fact specific inquiry and courts consider many factors." *Network Enterprises, Inc. v. APBA Offshore Productions, Inc.,* 427 F. Supp. 2d 463 (S.D.N.Y. 2006). However, conclusory allegations of an alter ego are insufficient to survive a motion to dismiss. *See Manos v Geissler,* 377 F. Supp. 2d 422, 425 (S.D.N.Y. 2005).
>
> *Kalin v. Xanboo, Inc.,* 526 F. Supp. 2d 392, 403 (S.D.N.Y. 2007).

/ / /

### c. Rule 9 Applies to Alter Ego Allegations Because They Sound In Fraud

"This requirement exists primarily "to afford defendant[s] fair notice of plaintiff's claim and the factual ground upon which it is based.""

*Liberty Mut. Ins. Co. v. Horizon Bus Co.,* 2011 U.S. Dist. LEXIS 31569 (E.D.N.Y. Feb. 22, 2011), *quoting Mills v. Everest Reinsurance Co.,* 410 F. Supp. 2d 243, 248 (S.D.N.Y. 2006), *quoting Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990).

"[A]ll allegations of fraudulent predicate acts, are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."

*First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159, 178-180 (2d Cir. N.Y. 2004) (Rule 9(b) applicable to allegations of bankruptcy fraud), *citing Moore v. PaineWebber, Inc.,* 189 F.3d 165, 172 (2d Cir. 1999) and *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir. 1994).

"Allegations of fraud which 'fail to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b).'"

*E*TRADE Sav. Bank v. National Settlement Agency, Inc.,* 2008 U.S. Dist. LEXIS 60993, 9-10 (S.D.N.Y. July 25, 2008), *quoting Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir. 1986).

"A claim for fraud under New York law requires a showing of '(1) a misrepresentation or material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury.' [Citation.]  In addition, when a plaintiff alleges fraud in the complaint, Federal Rule of Civil Procedure 9(b) contains an additional requirement: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

*Kohler v. Errico,* 2011 U.S. Dist. *LEXIS* 36985 (S.D.N.Y. Feb. 23, 2011), *citing Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996), *and quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 187 (2d Cir. 2004).

/ / /

/ / /

### d. Penguin Cannot Allege "Complete Domination" of American Buddha Over OML, or *Vice Versa*, With Respect to Any Transaction

Penguin has presented no evidence of "domination" of one company by another, or of any company by any person.[2] To pass Rule 9(b) muster, a plaintiff must specifically allege how transfers between husband and wife or their related corporate entities were not simply innocent gifts of the sort that are shared among family members:

> "The Amended Complaint fails to explain either how or when Sohrab received assets from Soleyman, what those assets were, or how or when Sohrab conveyed or concealed assets in contemplation of bankruptcy. Moreover, *there is nothing in the record to support the allegation that when Afsar wired monies to Sohrab, she was sending him his own assets in an effort to help him conceal them, rather than sending him gifts of money like those that she routinely sent to Sohrab's siblings during the same period*."
>
> *First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159, 178-180 (2d Cir. N.Y. 2004) (emphasis added).
>
> ***"[A]n inference of scienter must be more than merely plausible or reasonable -- it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."***
>
> *Anwar v. Fairfield Greenwich, Ltd.,* 728 F. Supp. 2d 372, 407 (S.D.N.Y. 2010).

Penguin tries to take OML to task about corporate formalities, but has no grounds. *First,* OML produced extensive financial records showing regular use of the corporate name, accurate contractual and financial recordkeeping, and no irregular transactions. *Second,* an Oregon limited liability company owner does not risk alter ego liability merely for not keeping corporate formalities. *Kibec v. Balog,* 2012 U.S. Dist. *LEXIS* 90299 (Or. May 29, 2012). The only corporate formalities required of one-member limited liability company are filing Annual

---

[2] Allegations of sharing addresses, offices, and other incidents of informal relationship don't equal alter ego allegations. *E*TRADE Sav. Bank, supra,* 2008 U.S. Dist. LEXIS 60993 (S.D.N.Y. July 25, 2008).

Reports and paying corporate fees.  Indeed, the alter ego doctrine may not even apply to limited liability companies.[3]

Penguin relates the financial exchanges between two spouses who have filing income tax returns jointly for 38 years, and live in a community property state.  There is nothing nefarious to be found there, nor has anything been concealed.  Further, Penguin does not gain standing to seek to make legal hay from these innocent financial doings merely by groundlessly imputing ill motives to defendant and its counsel, unrelated to any actionable deception of Penguin or damage to Penguin.

### e. Penguin Cannot Allege Any Fraud or Wrongful Act by American Buddha Arising Out of Any Purported "Domination" of OML

Penguin cannot allege any fraud or wrongful act by American Buddha arising out its "domination" of OML.

*First,* Penguin has not alleged and cannot allege American Buddha's "domination" of OML.  Particular pleading as to all defendants would be required under Rule 9(b).  *Aetna Casualty and Surety Co.v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2nd Cir. 2005).

*Second,* because Penguin has not and cannot allege (a) that American Buddha made any fraudulent representations, (b) that Penguin relied on any fraudulent representations, or (c) that Penguin was damaged by any fraudulent representations.

*Third,* because Penguin has not and cannot allege any wrongful act arising from American Buddha's nonexistent domination of OML that caused damage to Penguin.  Penguin has not alleged any damage at all in this case.  An alter ego claim will not lie without actual

---

[3] "[M]any states, including Nevada, have formally incorporated [the alter ego doctrine] it into their statutory schemes for corporations. See NEV. REV. STAT. § 78.747 (2004). This codification as to corporations, however, leaves open the question as to whether to extend similar principles to limited liability companies.  *** [A]lthough Nevada generally recognized limited liability companies in 2001 when it codified the alter ego doctrine for corporations, it did not similarly codify the doctrine for limited liability companies. This lacuna arguably creates a

damages, and Rule 9(b) requires that damages be plead with specificity.  *Pennsylvania Employee Benefit Trust Fund v. Zeneca, Inc.,* 710 F.Supp.2d 458, 478 (Del. 2010).

### 3. Penguin's "Nonprofit Conspiracy" Lacks The Rationality Required by Rule 9(b)

Penguin's claim that American Buddha is perpetrating a "nonprofit conspiracy" with its counsel to injure Penguin by running a library is not rational.  Accordingly, if alleged it would not survive a motion to dismiss, and therefore cannot serve as a hypothetical jurisdictional predicate.  Such a fanciful notion lacks both "particularity and rationality," which the Second Circuit observed to be fatal under Rule 9(b):

> "Moreover, *we are hindered in our efforts to draw reasonable inferences in Plaintiffs' favor, because we cannot understand why Sohrab's relatives would secretly agree* to disclaim their interest in Soleyman's estate only so that Sohrab - who was supposedly contemplating bankruptcy at the time - could then convey the assets back to Afsar, who would then transfer money back to Sohrab. *Lacking both particularity and rationality, these allegations likewise fail to allege predicate acts adequately*."
>
> *First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d at 180 (emphasis added).

### 4. If Penguin Attempted to Allege A "Nonprofit Conspiracy," The Fanciful Notion Would Not Pass The *Twombly* Plausibility Test Under Rule 8(a)

Alter ego allegations must satisfy Rule 8(a) *Twombly* plausibility requirements.

> "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint … has not "show[n]"--"that the pleader is entitled to relief."
> *Ashcroft v. Iqbal,* 556 U.S. 662, 678-679 (2009), *quoting* F.R.Civ.P. 8(a)(2).

"Plaintiffs have failed to allege a sufficient factual basis that would plausibly establish the existence of an alter ego relationship."  *E*TRADE Sav. Bank, supra,* 2008 U.S. Dist. LEXIS 60993 (S.D.N.Y. July 25, 2008).  In her opinion dismissing the alter ego allegations in the *E*Trade* case, Judge Swain cited to two District Court cases decided under New York law.

---

negative inference that there is no alter ego exception for limited liability companies."

*First,* Judge Swain summarized the holding of *Kalin v. Xanboo, cited supra,* as follows: "allegation of alter ego liability premised upon interrelated ownership and shared office location insufficient to survive motion to dismiss." *E*TRADE* at page 3.

*Second,* she summarized the holding of *@Wireless Enters. v. AI Consulting,* LLC, 2011 U.S. Dist. LEXIS 51973 (W.D.N.Y. May 13, 2011)[4] as follows: "allegations of joint ownership and cross-representation of officers on company websites insufficient to support a theory of alter ego liability." *E*TRADE* at *id.*

In this case, Penguin has "thrown it all against the wall," and imagines that it can discern there a sort of Rorschach blot that resembles a legitimate theory of jurisdiction. But there is no nefarious pattern to be discerned in the splatter of evidence, that amounts to nothing more than "interrelated ownerships, shared office space, joint ownership, and cross-representation on websites," which, just as in *E*Trade, Kalin v. Xanboo, and @Wireless*, amount to no alter ego evidence at all. Leave aside how asserting that OML being the alter ego of American Buddha would help establish jurisdiction over American Buddha, since OML has no jurisdictional presence in New York either, and there is no cognizable claim assertable against OML in the wildest stretch of fantasy.

At least in *E*Trade, Kalin v. Xanboo, and @Wireless,* the plaintiffs had actually suffered some damage before they began trying to extend their liability theories to purported alter ego defendants. At least the defendants had engaged in some business transactions with the plaintiffs. None of these factors are present here. Accordingly, there is no plausibility to the claim that Penguin says it would like to pursue for mere jurisdictional effect. It would be futile

---

*AE Rest. Assocs., LLC v. Giampietro (In re Giampietro),* 317 B.R. 841, 846-847 (Bankr. D. Nev. 2004).
[4] In *@Wireless, supra,* the improper assertion of alter ego allegations was held to be a violation of Rule 11. "Plaintiffs' claims against Jerabeck, under the alter ego/veil piercing theory, were not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new

- 9 –

to allow Penguin to amend its complaint, and arguments premised upon un-allegeable claims are not relevant to the analysis of the issue presented by this motion.

5. **Conclusion**

Penguin's arguments asserted in the opposition have no merit. The evidence submitted by Penguin does not establish the required revenue prong of C.P.L.R. § 302(a)(3)(ii), or that the assertion of jurisdiction over American Buddha would comport with traditional notions of fair play and substantial justice. Accordingly, the Court is respectfully requested to dismiss the action for lack of personal jurisdiction over American Buddha.

Dated:  November 20, 2012
Respectfully submitted:

/s/Charles Carreon
_____

Charles Carreon,
Admitted *Pro Hac Vice*
Attorney for Defendant American Buddha

---

law. In that regard, Plaintiffs have not produced any evidence to support an alter ego/veil piercing theory." *@Wireless Enters. v. AI Consulting, LLC,* 2011 U.S. Dist. LEXIS 51973 at *11 (W.D.N.Y. May 13, 2011).