USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/7/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
:
PENGUIN GROUP (USA), INC.,                               :
:
                 Plaintiff,   :
:        No. 09 Civ. 528 (RA)
     -v-                                                :
:        OPINION AND ORDER
AMERICAN BUDDHA,                                         :
:
                 Defendant.   :
:
---------------------------------------------------------X

RONNIE ABRAMS, United States District Judge:

     Plaintiff Penguin Group (USA), Inc. brings this copyright infringement action against Defendant American Buddha. After extensive litigation, including before the Court of Appeals for the Second Circuit and New York Court of Appeals, American Buddha filed its third motion to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the following reasons, Penguin has failed to satisfy the substantial revenue prong of New York's long-arm statute as is required to establish personal jurisdiction over American Buddha. American Buddha's motion is thus granted and this case is dismissed.

I.     Background

    A.     Factual Background[1]

     Penguin is a United States trade book publisher that is incorporated in Delaware and maintains its principal place of business in New York City. (Compl. ¶ 2.) American Buddha is an Oregon nonprofit corporation with its principal place of business in Arizona. (Id. ¶ 3.)

---

[1]     The Court assumes the parties' familiarity with the facts and procedural history of this case, which have been addressed in prior opinions of this Court, the Second Circuit and the New York Court of Appeals. See Penguin Grp. (USA) Inc. v. Am. Buddha, No. 09 Civ. 528 (GEL), 2009 WL 1069158 (S.D.N.Y. Apr. 21, 2009); Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30 (2d Cir. 2010); Penguin Grp. (USA) Inc. v. Am. Buddha, 16 N.Y.3d 295 (N.Y. 2011); Penguin Grp. (USA) Inc. v. Am. Buddha, 640 F.3d 497 (2d Cir. 2011).

American Buddha seeks to "provide a unique resource for scholars and students, by providing access to a contained, searchable database of written works spanning centuries." (Def.'s Mem. 7.) Its database is available through two coordinated websites, the American Buddha Online Library and the Ralph Nader Library (collectively, "the American Buddha websites" or "the websites").[2] (Tara Carreon Decl., Oct. 1, 2011 ("T. Carreon Decl."), ¶ 12.)

Tara Carreon—the wife of American Buddha's counsel, Charles Carreon—is the founder, president, director and sole employee of American Buddha. (Id. ¶¶ 1, 3; Tara Carreon Dep., June 29, 2012, ("T. Carreon Dep."), 10:1-3.) She serves as the librarian for the American Buddha websites. (T. Carreon Decl. ¶ 3.) American Buddha shares a physical address with Mr. Carreon's company, Online Media Law, LLC ("OML"),[3] but the entities occupy separate spaces and use separate computers and landlines. (T. Carreon Dep. 19:2-5.) American Buddha does not pay rent, and to the extent American Buddha has any costs (i.e., domain name registration fees, books, Internet bills), Ms. Carreon pays for them with her own money. (Id. at 14:13-17:12.) American Buddha does not have an accountant, does not file tax returns and does not regularly observe corporate formalities, such as keeping board minutes or resolutions. (Id. at 13:5-23.) Because Ms. Carreon works full time for American Buddha and neither she nor it has separate income, (Id. at 17:13-18; Charles Carreon Dep., June 29, 2012 ("C. Carreon Dep."), 101:11-24), Penguin asserts that Mr. Carreon and/or OML financially support American Buddha. (Pl.'s Opp'n 13.)

---

[2]   The websites are located at the following Internet addresses: www.american-buddha.com and www.naderlibrary.com/index.htm.

[3]   Mr. Carreon wholly owns and controls OML. (Charles Carreon Dep., June 29, 2012 ("C. Carreon Dep."), 7:22-24.) Mr. Carreon originally practiced law through OML, but now engages in "legal consulting" and other "business transactions" through the company, including the contract with Amazon discussed below and registration of clients' domain names. (C. Carreon Dep. 5:16-7:1, 100:9-13; Hr'g Tr., Dec. 7, 2012 ("Dec. 7 Hr'g Tr."), 8:16-19, 10:9-20.)

2

As reflected in several examples in the record, American Buddha, OML, its now-defunct wholly owned subsidiary One Prime Publishing, LLC, and the Carreons work closely together. First, Mr. Carreon serves as American Buddha's pro bono attorney. (C. Carreon Dep. 5:13-15.) Mr. Carreon has no formal records or bills documenting his services to American Buddha, although he has kept handwritten notes of his services for the past year. (Hr'g Tr., Dec. 7, 2012 ("Dec. 7 Hr'g Tr."), 9:14-25; see also C. Carreon Dep. 11:3-10; T. Carreon Dep. 18:14-19:1.) As counsel to American Buddha, Mr. Carreon, among other things, communicated with the general counsel of Google regarding Google's decision to "purge" the American Buddha website from the Google index of websites such that Google results no longer displayed direct links to the site. (Pl.'s Ex. 36.) American Buddha complained that Google's decision was "interfering both with the access of its 50,000-plus members, and with the Library Site's ability to reach new members." (Id. at 1.)

Second, OML entered into a publishing agreement with Amazon for the purpose of selling certain works on the Kindle Digital Publishing platform. (Charles Carreon Decl., Oct. 1, 2012 ("C. Carreon Decl."), ¶ 7; C. Carreon Dep. 93:20-94:25, 97:17-22.) Pursuant to that agreement, thirteen literary works that were authored by the Carreons were sold on the Kindle platform, (Pl.'s Exs. 19-31; Def.'s Ex. 4), and OML, through the actions of Mr. Carreon, voluntarily designated American Buddha as the publisher of those titles. (C. Carreon Dep. 57:18-24 ("[T]he American Buddha name would give it some marketing panache, so that's what I did there."), 58:1-59:23, 72:3-5 ("[S]ince it all appeared on American Buddha first, I identified American Buddha as its publisher.").)[4] As of July 26, 2012, the total amount of royalties earned

---

[4] The parties dispute the meaning of "publisher" in the context of the Kindle platform. Penguin asserts that, as the publisher, any revenue earned from the Kindle sales was constructively received by OML for American Buddha's benefit. (Dec. 7 Hr'g Tr. 32:20-33:3.) As the publisher, Penguin asserts, American Buddha was responsible for making the works available to the public and was entitled to the revenues earned from any sales of

by OML through sales on Amazon appears to be $2,078.33. (Pl.'s Ex. 39 (Decl. of Amazon.com Inc. Custodian of Records, July 31, 2012, ¶ 4).)[5]

Third, in 2009, American Buddha sent an email to over 50,000 email addresses that had "sign[ed] up" on the American Buddha websites, including over 100 that are associated with institutions in New York, promoting *Trail of the Octopus*, a book that was published by One Prime Publishing, LLC. (Pl.'s Exs. 37 & 42.) In the email, American Buddha encouraged its members to purchase the book on Amazon or read it on the American Buddha websites. (Pl.'s Ex. 37.)

Finally, the Ralph Nader Library website includes a link to the OML website, which prominently displays a graphic for *The Sex.com Chronicles*, a book written by Mr. Carreon. (Pl.'s Ex. 34.) By clicking on that graphic, viewers reach a website that allows one to read the book or purchase it on Amazon. (T. Carreon Dep. 52:7-55:19.)

## B.   Procedural History

On January 20, 2009, Penguin commenced this action for copyright infringement pursuant to 17 U.S.C. § 501, alleging that American Buddha infringed on its copyrights in four books—*Oil!* by Upton Sinclair; *It Can't Happen Here* by Sinclair Lewis; the E.J. Kenney translation of *The Golden Ass* by Apuleius; and the R.E. Latham translation of *On the Nature of*

---

the works. (Id. at 31:23-33:12.) In contrast, Mr. Carreon stated, "[S]o to say publisher here is really merely filling in the little block and does not reflect on the fact that American Buddha is the publisher. American Buddha is not a publisher. That would not be a fair description of what they do. They are a [w]ebsite. And so to state that it was published on American Buddha, the [w]ebsite, is one thing. But that is something that can never generate revenue, never will generate revenue, because it's free." (C. Carreon Dep. 72:22-73:5.)

[5]   As reflected in OML's Form 1099 statements, OML earned a total of $1,406.74 between 2008 and 2010 through Amazon sales. (Def.'s Ex. 3.) Of this amount, $571.58 was earned through Kindle sales of the thirteen literary works; the remaining $835.16 was earned through sales of two paperbacks sold on Amazon—*The Sex.com Chronicles* and *Trail of the Octopus*—for which American Buddha was not listed as the publisher. (Id.; C. Carreon Dep. 38:12-39:8.) Based on the record, it is not clear whether the total amount of revenue provided by Penguin—$2,078.33—includes revenue earned through the sales of the two paperbacks. Given the Court's obligation to construe all facts in the light most favorable to Penguin, however, the Court treats $2,078.33 as all of the revenue earned by OML through the Kindle sales from the inception of its relationship with Amazon.

*the Universe* by Lucretius—by posting complete copies of these works on the American Buddha websites. (Compl. ¶¶ 9, 18, 21; Pl.'s Exs. 1-4.) On March 9, 2009, American Buddha moved to dismiss the complaint for lack of personal jurisdiction. On April 21, 2009, Judge Lynch granted the motion, finding that the situs of the injury for purposes of New York's long-arm statute, NY CPLR 302(a)(3)(ii), was the location of the infringing conduct—Arizona or Oregon—and not where Penguin was located. Penguin Grp. (USA) Inc. v. Am. Buddha, No. 09 Civ. 528 (GEL), 2009 WL 1069158, at *2, 3 (S.D.N.Y. Apr. 21, 2009) ("Am. Buddha I"). On appeal, the Second Circuit certified a question to the New York Court of Appeals regarding the situs of the injury. Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 32 (2d Cir. 2010) ("Am. Buddha II").

On March 24, 2011, the Court of Appeals answered a narrowed version of the question certified by the Second Circuit:

> In copyright infringement cases involving the uploading of a copyrighted printed literary work onto the Internet, is the situs of the injury for purposes of determining long-arm jurisdiction under NY CPLR 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?

Penguin Grp. (USA) Inc. v. Am. Buddha, 16 N.Y.3d 295, 301-02 (N.Y. 2011) ("Am. Buddha III"). The Court of Appeals held that "a New York copyright owner alleging infringement sustains an in-state injury pursuant to CPLR 302(a)(3)(ii) when its printed literary work is uploaded without permission onto the Internet for public access." Id. at 304.

In light of the Court of Appeals' decision, the Second Circuit vacated the judgment and remanded the case to the district court to determine whether the Court can exercise personal jurisdiction over American Buddha. Penguin Grp. (USA) Inc. v. Am. Buddha, 640 F.3d 497, 501 (2d Cir. 2011) ("Am. Buddha IV"). Upon remand, the case was reassigned to Judge Koeltl, and on July 22, 2011, American Buddha filed a second motion to dismiss for lack of personal

jurisdiction. American Buddha asserted that the Court cannot exercise personal jurisdiction over it because it derives no revenue from interstate or international commerce, a requisite of CPLR 302(a)(3)(ii). (Hr'g Tr., Jan. 24, 2012 ("Jan. 24 Hr'g Tr."), 20:13 ("[American Buddha] really does have no financial activity whatsoever.").) At the oral argument held on January 24, 2012, Judge Koeltl denied the motion without prejudice to renewal after the conclusion of limited jurisdictional discovery. (Dkt. No. 40.) In his ruling, Judge Koeltl referred to three allegations, that, if true, would cast doubt on American Buddha's representations regarding its revenue and support a finding that the remaining requirements of personal jurisdiction were met: (1) "[t]he plaintiff alleges that the defendant was listed as the publisher of numerous literary works sold in Kindle ebook format on Amazon.com and that the Amazon.com website features a 'best sellers rank' indicating that sales of the book have been made;" (2) "the plaintiff contends, although the defendant denies, that one of the defendant's websites, www.NaderLibrary.com, links users to a separate website where a book by [Mr. Carreon] . . . is advertised for purchase both in physical and digital form;" and (3) "the plaintiff contends that the defendant's website reaches out to New York residents" as demonstrated through correspondence between American Buddha's attorney, Mr. Carreon, and Google's general counsel.[6] (Jan. 24 Hr'g Tr. 27:7-28:15.)

This case was reassigned to this Court on July 10, 2012. Jurisdictional discovery was completed on or about August 3, 2012 and American Buddha filed the instant motion to dismiss for lack of personal jurisdiction on October 5, 2012. Oral argument was held on December 7, 2012. For the following reasons, American Buddha's motion is granted.

---

[6]   Judge Koeltl elaborated that "[t]he plaintiff points to correspondence between the defendant's attorney and Google's general counsel posted on the American Buddha.com website which states that the defendant's website 'has built up a membership of over 50,000 users' and that 'its pages have steadily climbed in page rank under the Google PR system' such that for some categories the website 'would appear on the first page of search results for searches involving major topics of political, artistic, philosophical, and cinematic importance.'" (Jan. 24 Hr'g Tr. 27:22-28:6.)

## II. Standard of Review

American Buddha moves to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). On a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of showing that the Court has jurisdiction over the defendant. Am. Buddha II, 609 F.3d at 34. "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Id. at 34-35 (internal quotation marks omitted). However, "[a]fter discovery, the plaintiff's prima facie showing . . . must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)). "At that point, the prima facie showing must be factually supported." Id. In ruling on a motion to dismiss for lack of personal jurisdiction, the Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiff[], resolving all doubts in [its] favor." Porina v. Marward Shipping Co., 521 F.3d 122, 126 (2d Cir. 2008).

## III. Discussion

"In litigation arising under federal statutes that do not contain their own jurisdictional provisions, such as the Copyright Act under which suit is brought in the case at bar, federal courts are to apply the personal jurisdiction rules of the forum state, provided that those rules are consistent with the requirements of Due Process." Am. Buddha II, 609 F.3d at 35. Analysis of personal jurisdiction requires a two-step inquiry. The Court must first determine whether the exercise of personal jurisdiction is proper under the laws of the forum state. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007). Only if the answer is in the affirmative does the court then consider whether a finding of personal jurisdiction "would be compatible with the requirements of due process established under the Fourteenth Amendment." Id.

New York's long-arm statute, NY CPLR 302, governs the issue of personal jurisdiction in this case. Only one provision of the statute is applicable here, CPLR 302(a)(3)(ii), which provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he expects or should reasonably expect the act to have consequences in that state and derives substantial revenue from interstate or international commerce.

CPLR 302(a)(3)(ii). To establish jurisdiction under that subsection, a plaintiff must satisfy five elements: (1) "the defendant's tortious act was committed outside New York;" (2) "the cause of action arose from that act;" (3) "the tortious act caused an injury to a person or property in New York;" (4) "the defendant expected or should reasonably have expected that his or her action would have consequences in New York;" and (5) "the defendant derives substantial revenue from interstate or international commerce." Am. Buddha II, 609 F.3d at 35 (citing LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214-15 (N.Y. 2000)). Following the Court of Appeals' ruling that a "New York copyright owner alleging infringement sustains an in-state injury pursuant to CPLR 302(a)(3)(ii) when its printed literary work is uploaded without permission onto the Internet for public access," Am. Buddha III, 16 N.Y.3d at 304, the Second Circuit concluded that Penguin satisfied the third element of the long-arm statute and remanded to this Court to determine whether Penguin satisfied the remaining jurisdictional and Due Process requirements. Am. Buddha IV, 640 F.3d at 501. The parties do not contest elements one and two; accordingly, only elements four and five are presently in dispute. Because Penguin has failed to satisfy the "substantial revenue" requirement of the long-arm statute, the Court does not need to reach the "reasonable expectation" element or the Due Process requirements of personal

jurisdiction.[7]

In support of its motion to dismiss, American Buddha contends that Penguin cannot satisfy the substantial revenue element of the long-arm statute because it "operates on a strictly eleemosynary model" and has no revenue whatsoever. (Def.'s Mem. 8.) In response, Penguin asserts two arguments: (1) the revenue that was earned by OML from sales on the Kindle platform of thirteen literary works was in fact derived by American Buddha as the publisher of those works, (see Pl.'s Opp'n 9-10; Dec. 7 Hr'g Tr. 29:10-22); and alternatively, (2) OML and Charles Carreon are alter egos of American Buddha and therefore the revenue earned by OML through those Kindle sales must be attributed to American Buddha. (Pl.'s Opp'n 10-13; Dec. 7 Hr'g Tr. 29:16-30:15.)

"The requirement for interstate commerce is intended to exclude foreign businesses that 'are of a local character.'" Gucci Am., Inc. v. Frontline Processing Corp., 721 F. Supp. 2d 228, 242 (S.D.N.Y. 2010) (quoting Bensusan Rest. Corp. v. King, 126 F.3d 25, 29 (2d Cir. 1997)). "The 'interstate commerce' prong [of CPLR 302(a)(3)(ii)] requires no direct contact with New York State." Ingraham v. Carroll, 90 N.Y.2d 592, 598 (N.Y. 1997). "No specific dollar threshold is required for the revenue to be deemed substantial, and the main concern is the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums." Gucci Am., Inc., 721 F. Supp. 2d at 242 (internal quotation marks omitted). "Revenue from interstate and international commerce may be analyzed as a percentage of the total revenues, or as an absolute number, but neither approach is binding and

---

[7] The Court nonetheless notes that Penguin's evidence clearly establishes that American Buddha knew, or at a minimum should reasonably have expected, that its actions would have consequences in New York. American Buddha knew that Penguin held its copyrights in New York, American Buddha's members include more than 100 New Yorkers, and American Buddha expressly markets itself as the "world's best media website," providing "online access for all." (Pl.'s Exs. 17 & 18.) American Buddha should no doubt reasonably have expected that its conduct would have consequences in New York. See, e.g., McGraw-Hill Cos. v. Ingenium Techs. Corp., 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005); Am. Network, Inc. v. Access Am./Connect Atlanta, Inc., 975 F. Supp. 494, 498 (S.D.N.Y. 1997).